Elissa D. Miller (CA Bar No. 120029)
*elissa.miller@gmlaw.com*
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for Sam S. Leslie,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>RAC Development, Inc.,<br>Debtor. | Case No. 2:24-bk-13735-DS<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENT WITH CITIBANK, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES, AND DECLARATION OF SAM S. LESLIE IN SUPPORT THEREOF**<br><br>**Fed. R. Bankr. P. 9019(a) and Loc. Bankr. R. 9013-1(o)**<br><br>[No hearing required] |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Sam Leslie, the duly appointed, qualified, and acting chapter 7 trustee ("Trustee") for the estate of the above-captioned debtor RAC Development Inc. ("Debtor"), will and hereby does move this Court for an order approving the "*Chapter 7 Trustee's Motion To Approve Settlement With Citibank, N.A.; Memorandum Of Points And Authorities, And Declaration Of Sam S. Leslie In Support Thereof*" (the “Motion").

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

Pursuant to the Motion, the Trustee seeks to approve a settlement (the "Settlement") entered by and between the Trustee and Citibank N.A. ("Citibank") pursuant to which the parties resolved the Trustee's avoidance claims against Citibank for a total of $13,500 and the waiver of claims, including pursuant to 11 U.S.C. §502(h). The Settlement also includes mutual releases.

This Motion is brought in accordance with Federal Rule of Bankruptcy Procedure 9019(a) and Local Bankruptcy Rule 9013-1(o)(1) and is made on the ground that the Trustee has determined that it is in the best interests of the bankruptcy Estate to settle this matter on the terms set forth in the following Motion and in the Settlement. Accordingly, the Trustee submits that the Settlement is fair and equitable and in his best business judgment.

This Motion is based on the attached memorandum of points and authorities, the declaration of Sam S. Leslie in support thereof and the exhibit attached hereto.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order:

1. Granting the Motion;
2. Approving the Settlement with Citibank;
3. Authorizing the Trustee to take such other and further action as may be necessary by the terms of the Settlement; and
4. Granting such other relief as the Court deems just and proper.

DATED: July 30, 2026 **GREENSPOON MARDER LLP**

By: */s/Elissa D. Miller*
Elissa D. Miller Attorneys for
Sam S. Leslie, Chapter 7 Trustee

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

As part of his ongoing administration of the Debtor’s estate, the Trustee investigated the assets and the liabilities. In connection therewith, the Trustee, with the assistance of his forensic team at Developments Specialists, Inc. ("DSI"), concluded that the Debtor became a Ponzi scheme as of February 1, 2019 and also payments were made on account of the Debtor's principal TJ Syiau ("TJ") for his personal benefit and not the benefit of the Debtor.

The Trustee made demand on all identified potential defendants, one of which was Citibank whose credit card ha been issued to and used personally by TJ but was paid by the Debtor. Citibank disputed the claim and after negotiations, entered into the Settlement approval of which is sought by this Motion.

The Trustee submits that approval of the Settlement is in his best business judgment and in the best interests of the estate.

**II.**

**PERTINENT FACTS**

The following facts are set forth in the Declaration of Sam S. Leslie (“Leslie Decl.”) attached hereto:

The Debtor RAC Development, Inc. (the "Debtor") was an investment firm which solicited millions of dollars in investments primarily from the Chinese community.

On May 13, 2024 (the "Petition Date"), an involuntary petition under Chapter 7 of Title 11 of the Bankruptcy Code was filed by approximately 53 creditors (the "Petitioning Creditors") who claimed they were defrauded by the Debtor ("Bankruptcy Code"). On May 16, 2024, the Petitioning Creditors filed an Emergency Motion to Appoint an Interim Trustee/ [Dkt. No. 6] On May 22, 2024, the Court heard the Emergency Motion and on May 23, 2024, entered an Order Granting the Emergency Motion to Appoint an Interim Trustee. [Dkt. No. 37] On May 24, 2024, Sam S. Leslie was appointed the Interim

Trustee. On June 14, 2024, the Court entered the Order for relief [Dkt. No. 51] and the Trustee was reappointed [Dkt. No. 55] and continues to serve in that capacity since first appointed.

Based on his review of the case, documents and records and after speaking with counsel for the Petitioning Creditors as well as another large group of creditors, both law firms which he has since retained as special counsel subject to Court order, the Trustee is informed that the Debtor's alleged business was to invest in real estate. In connection therewith the Debtor solicited investments from hundreds of investors primarily from the Chinese community who, the Trustee is informed and has verified, invested many hundreds of millions of dollars.

The Debtor's investment scheme, however, came to a crushing halt after the investors began requesting and then demanding the return of funds and learned that not only was there no money remaining in the Debtor's accounts, but other than three properties (the Seal Beach Property which the Trustee sold; the Long Beach Property which the Trustee abandoned; and the Torrey Pines Property purchased by the Debtor in the name of TJ and his wife, which the Trustee recovered and sold), the Debtor either had sold, transferred or never owned the properties in which they purported to invest. In other words, the Debtor's business, as determined by DSI, was nothing more than a Ponzi scheme as of February 19, 2019.

Following his appointment the Trustee began to investigate the assets of the estate. Among other things, the Trustee obtained bank statements pursuant to 2004 orders and retained DSI as his forensic accountants to review the Debtor's books records and bank account statements. Based on that review, DSI identified approximately 10 targets who received payments not for the benefit of the Debtor but for the benefit of the Debtor's principals. Once such target is Citibank.

The Trustee made demand for the return of these funds and after negotiations, the Trustee reached the agreement set forth in the Settlement, attached hereto as **Exhibit 1.**

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

## III.

## AGREEMENT

Attached to the Leslie Decl. as **Exhibit 1** is a true and correct copy of the Settlement between the Trustee, on the one hand, and Citibank, on the other hand. The following is a summary of the Settlement's pertinent terms. Parties in interest are encouraged to review the Settlement for its full terms and conditions.

In full settlement of the disputes the Trustee and the Citibank agree as follows:

1. Within 14 calendar days after entry of the Approval Order, as defined in Paragraph 1.1 of the Settlement, Citibank shall pay to the estate the sum of $13,500 by cashier's check, money order, or wire transfer (the "Settlement Payment").

2. Citibank expressly waives any claim provided by 11 U.S.C. § 502(h) that may arise in connection with the Settlement Payment.

3. The parties are exchanging mutual releases.

## IV.

## THE SETTLEMENT SHOULD BE APPROVED BECAUSE IT IS FAIR, EQUITABLE AND IN THE BEST INTEREST OF THE ESTATE

Federal Rule of Bankruptcy Procedure 9019 provides that “on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.” Fed. R. Bankr. P. 9019. Compromise is favored over continued litigation. See In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) (citing Port O’Call Investment Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976)). A compromise should be approved if it is “fair and equitable.” In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986); Burton v. Ulrich (In re Schmidtt), 215 B.R. 417, 424 (9th Cir. B.A.P. 1997) (considering whether a compromise is fair and equitable for the creditors and whether it is in the best interests of the estate). “Whether a compromise will benefit or harm the Debtor is immaterial.” Burton v. Ulrich (In re Schmidtt), 215 B.R. at 424.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

In determining whether to approve a compromise or settlement, the court must consider the following factors:

1. the probability of success in the litigation;
2. the difficulties, if any, to be encountered in the matter of collection;
3. the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
4. the paramount interest of the creditors and a proper deference to their reasonable views.

In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986). When considering these factors, the court need "only canvass the issues." In re Schmitt, 215 B.R. at 423 (citing In re Blair, 538 F.2d at 851-52); Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822 (1983). "A mini trial on the merits is not required." In re Schmitt, 215 B.R. at 423. A compromise or settlement should be approved unless it "fall[s] below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822 (1983); see also In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) (holding that a settlement should be approved if it is reasonable given the particular circumstances of the case), cert. denied, 479 U.S. 854 (1986).

The compromise approval process does not contemplate that a bankruptcy court will substitute its business judgment for that of a trustee. To the contrary, a settlement that has been negotiated by a trustee, as representative of the estate, is entitled to deference. See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) ("The objecting creditors may not substitute their judgment for that of the Trustee").

When the Trustee applies the A&C factors to the Settlement at issue, the application thereof supports his determination that the Settlement is in his best business judgment and is fair, reasonable and should be approved.

**A. Probability of Success in the Litigation and Difficulties of Collection**

It is the Trustee's opinion that this first A&C factor weighs in favor of the Settlement, albeit only minimally. Despite that the card was issued to TJ and the Trustee believes that it was used not for the business but by TJ personally, Citibank disputes that to be the case. However, whether the card use was for the Debtor's business or not will be a question of fact and the individual charges will have to each be reviewed. Thus, while the Trustee believes that he will be able to prevail, there is always a risk that he will not.

**B. The Difficulties, If Any, To Be Encountered In The Matter Of Collection**

The Second A&C factor, difficulties of collection, does not appear to be an issue. Citibank is an international financial organization.

**C. The Complexity of The Litigation Involved, And the Expense, Inconvenience and Delay Necessarily Attending to It**

The analysis of this third A&C factor fully supports the Settlement. While the litigation in this case is not complex -- a traditional avoidance claim-- it does have a few issues. The Trustee will need to prove that the Debtor is a Ponzi Scheme in order to prove actual fraud as many of the payments were more than four years prior to the petition date. If Citibank contests this and retains an expert, it will require discovery and a trial which will be a battle of the experts. If the Trustee does not prevail on the Ponzi issue, although he believes this is unlikely, it will negatively affect all of his avoidance claims.

Finally, the ultimate benefit between this Settlement and the total the Trustee could recover if he had to go to trial if is reasonable. This settlement is approximately 70% of the total amount paid to Citibank during the Ponzi period - the maximum amount the Trustee would collect if he had to file a complaint and was awarded a judgment. The 30% discount exceeds the attorney and expert fees the estate would incur in preparing the Complaint and prosecuting the action through trial. With the settlement, the Trustee is

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

recovering $13,500 without delay, without the Trustee filing a complaint or expending any time or fees for litigation.

### D. The Paramount Interest Of The Creditors And A Proper Deference To Their Reasonable Views

The application of this fourth and final A&C factor supports settlement. The paramount interest of creditors which a bankruptcy court must consider in deciding whether to approve a proposed compromise generally reflects not only the desire of creditors to obtain the maximum possible recovery, but also their competing desire that the recovery should occur in the least amount of time possible. See In re Marples, 266 B.R. 202, 206 (Bankr. D. Idaho 2001); In re Lake City RV, Inc., 226 B.R. 241, 243-44 (Bankr. D. Idaho 1998). Here, the settlement avoids the estate having to fund lengthy, and potentially uncertain litigation. The Settlement resolves the competing and existing claims between the parties in a manner meant to reduce ongoing administrative expenses and will facilitate the distribution of assets in an orderly fashion which will allow the chapter 7 case to be timely administered.

As noted earlier, generally, a court should approve a proposed settlement so long as it is above "the lowest point in the range of reasonableness," giving deference to a trustee's reasonable business judgment. See In re Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 8, 21 (D. Mass. 2003) ("The court may give substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement").

As a result of the Settlement, the Trustee has been able to keep administrative costs relative to the Citibank claim low. At the same time, the Trustee will recover approximately 70% of the maximum total claim against Citibank.

Based on the foregoing, the Trustee submits that the Settlement is fair and equitable, in his best business judgment and should be approved.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

## V.

## EFFECT OF SETTLEMENT ON ESTATE

As noted above, the Settlement provides for the recovery of funds for the estate. The Trustee considered the overall effect of the settlement on the particular litigation and the reduction in costs of suit. What the ultimate result of this Settlement will be on estate and distributions, however, is unknown at this time as there are other avoidance claims which are still in play, some of which involve significant amounts. With regard to these other claims, the Trustee was unable to resolve them prior to the avoidance deadline and filed complaints. Thus, the Trustee expects that the estate will incur fees for litigation, including expert fees and costs.

The Claims Bar Date ran on December 2, 2024, and a total of 343 claims were filed timely and an additional 10 claims were filed between December 3, 2024, and March 12, 2026. The total dollar amount of claims filed is $87,767,376.67 of which $10,338,461.08 are filed as secured, $8,384.39 as priority, and $800 as administrative. The Trustee has not yet had the opportunity to commence reviewing claims to determine what the ultimate allowed amount will be as, at this time, additional litigation must be completed before he can determine the cost/benefit. Thus, the incremental benefit of any one particular sale is impossible to quantify at present given this landscape.

## VI.

## CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an order:

1. Granting the Motion;
2. Approving the Settlement;
3. Authorizing the Trustee to take such other and further action as may be necessary by the terms of the Settlement; and

/ / /

/ / /

4. Granting such other relief as the Court deems just and proper.

DATED: July 30, 2026

**Respectfully Submitted,**

**GREENSPOON MARDER LLP**

By: *__/s/Elissa D. Miller__*
Elissa D. Miller Attorneys for
Sam S. Leslie, Chapter 7 Trustee

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

**DECLARATION OF SAM S. LESLIE**[1]

I, Sam S. Leslie, declare as follows:

1. I am an individual over the age of eighteen, and I am the duly appointed, qualified and acting Chapter 7 Trustee of the bankruptcy estate of the Debtor. Except as otherwise indicated, all statements made herein are based on my personal knowledge or my review of relevant documents. If called to testify as a witness in this matter, I could and would competently testify under oath to the truth of the statements set forth herein.

2. I make this Declaration in support of the attached "*Chapter 7 Trustee's Motion To Approve Settlement With Citibank, N.A.; Memorandum Of Points And Authorities, And Declaration Of Sam S. Leslie In Support Thereof*" (the “Motion).

3. The facts underlying this Motion are as follows: On May 13, 2024 (the "Petition Date"), an involuntary petition under Chapter 7 of Title 11 of the Bankruptcy Code was filed by approximately 53 creditors (the "Petitioning Creditors") who claimed they were defrauded by the Debtor ("Bankruptcy Code"). On May 16, 2024, the Petitioning Creditors filed an Emergency Motion to Appoint an Interim Trustee [Dkt. No. 6] (the "Emergency Motion"). On May 22, 2024, the Court heard the Emergency Motion and on May 23, 2024, entered an Order Granting the Emergency Motion to Appoint an Interim Trustee. [Dkt. No. 37] On May 24, 2024, I was appointed the Interim Trustee. On June 14, 2024, the Court entered the Order for Relief [Dkt. No. 51] and I was reappointed [Dkt. No. 55]. I have served in the capacity of Trustee since I was first appointed.

4. Based on my review of the case, documents and records and after speaking with counsel for the Petitioning Creditors as well as another large group of creditors, both law firms which he has since retained as special counsel, subject to Court order, the Trustee is informed and believes that the Debtor's alleged business was to invest in real estate. In connection therewith the Debtor solicited investments from

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the motion and memorandum of points and authorities to which this declaration is appended.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

hundreds of investors primarily from the Chinese community who, the Trustee is informed and has verified, invested many hundreds of millions of dollars.

5. The Debtor's investment scheme, however, came to a crushing halt after the investors began requesting and then demanding the return of funds and learned that not only was there no money remaining in the Debtor's accounts, but other than three properties (the Seal Beach Property which I sold; the Long Beach Property which I abandoned; and the Torrey Pines Property purchased by the Debtor in the name of TJ and his wife, which I recovered and sold), the Debtor either had sold, transferred or never owned the properties in which they purported to invest. In other words, the Debtor's business was nothing more than a Ponzi scheme as of February 19, 2019.

6. Following my appointment, I began to investigate the assets of the estate. Among other things, I retained DSI as my forensic accountants to review Debtor's books records and bank account statements. Based on that review, DSI identified approximately 10 potential targets of traditional avoidance claims, including Citibank.

7. After reviewing the Debtor's records and with the assistance of my professionals, I determined that the Debtor paid Citibank for charges on a credit card issued to TJ for his personal use. Before filing complaints, at my request, my attorneys sent letters demanding the return of these funds. After negotiations, I reached the agreement set forth in the Settlement, attached hereto as **Exhibit 1** pursuant to which Citibank will pay the estate $13,500**.**

8. In concluding that the Settlement was in my best business judgment, I considered each of the factors set forth in the A&C case as follows:

**A. <u>Probability of Success in the Litigation</u>**

9. It is my opinion that this first A&C factor weighs in favor of the Settlement, albeit only minimally. Despite the fact that the card was issued to TJ, Citibank claims that the use could have been for the Debtor's business. While I disagree with this position, whether the charges do or do not relate to the Debtor's business will be a question of fact

and will require a detailed review of all of the charges. Thus, while I believe that I will be able to do so, there is always a risk that I will not prevail.

**B. The Difficulties, If Any, To Be Encountered In The Matter Of Collection**

10. I have concluded that the Second A&C factor, difficulties of collection, does not appear to be an issue. Citibank is a multinational corporation.

**C. The Complexity of The Litigation Involved, And the Expense, Inconvenience and Delay Necessarily Attending to It**

11. My analysis of this third A&C factor also supports the Settlement. While the litigation in this case is not complex -- a traditional fraudulent transfer action -- it does have a few issues. Of primary concern is the fact that I will need to prove that the Debtor is a Ponzi Scheme as many of the were made more than four years prior to the petition date, i.e., during the Ponzi period. While I have confidence in DSI's analysis, I recognize that if Citibank contests this issue and retains an expert, it will require discovery and a trial which will be a battle of the experts. If I do not prevail on the Ponzi issue, although I believe this to be unlikely, it will negatively affect all of my avoidance claims. Finally, I have analyzed and concluded that the ultimate benefit between the settlement and the total recovery is reasonable as the differential would be less than the attorney and expert's fees, I would be forced to expend to try this case. If I prevail at trial, the total claim against Citibank is approximately $19,400. At a settlement total of $13,500, I am recovering approximately seventy percent (70%) without delay, without being required to expend substantial funds or time in litigation.

**D. The Paramount Interest Of The Creditors And A Proper Deference To Their Reasonable Views**

12. Finally, I have also concluded that the fourth and final A&C factor supports settlement. Here, the settlement avoids the estate having to find lengthy, difficult, and potentially uncertain litigation. The Settlement resolves the competing and existing claims between the parties in a manner meant to reduce ongoing administrative expenses and will facilitate the distribution of assets in an orderly fashion which will allow the chapter 7

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

case to be timely administered. In other words, as a result of the Settlement, I have been able to keep administrative costs related to the litigation low. At the same time, I will recover approximately 70% of the maximum total claim. This differential is less than the costs of litigation if I had to pursue this matter through trial.

**E. Effect Of Settlement On Estate**

13. I considered the overall effect of the settlement on the estate. This is the first of the recoveries on a general avoidance claim. What the ultimate result of this Settlement will be on distributions, however, is unknown at this time as there are a number of avoidance claims pending in their infancy, some of which are for claiming significant amounts. With regard to these other claims, I expect that I will need to incur fees for litigation, including expert fees and costs.

14. The Claims Bar Date ran on December 2, 2024, and a total of 343 claims were filed timely and an additional 10 claims were filed between December 3, 2024, and March 12, 2026. The total dollar amount of claims filed is $87,767,376.67 of which $10,338,461.08 is filed as secured and $8,384.39 as Priority and $800 as administrative. I have not yet had the opportunity to commence reviewing claims to determine what the ultimate allowed amount will be as, at this time as much litigation must be completed before I can determine the cost/benefit. Thus, the incremental benefit of any one particular sale is impossible to quantify at present given this landscape.

15. Based on the foregoing, I respectfully request that this Motion be granted, and the Settlement be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 29, 2026, at Palm Springs, California.

Sam S. Leslie, Trustee

# EXHIBIT 1

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Sam S. Leslie, solely in his capacity as Chapter 7 trustee (the "Trustee") of the estate of RAC Development, Inc. (the "Debtor"), on the one hand, and Citibank, N.A., a Federally Chartered National Bank ("Citibank"), on the other hand. The Trustee, and Citibank may each hereinafter be referred to individually as a "Party" or collectively as the "Parties."

## RECITALS

A. On May 13, 2024, an involuntary petition under Chapter 7 of Title 11 of the Bankruptcy Code was filed against the Debtor commencing the instant case (the "Bankruptcy Case"). On May 24, 2024, Sam S. Leslie was appointed the Interim Trustee, on June 14, 2024, the Court entered the Order for relief and Mr. Leslie was appointed the Chapter 7 Trustee in this case and has continued to serve in that capacity since.

B. The Debtor was an investment firm which solicited millions of dollars in investments primarily from the Chinese community. RAC would promise interests in real estate and high returns in exchange for the investments. Prior to the petition date, the Debtor ceased making payments to its investors.

C. Based on its review of the Debtor's financial documents and information subpoenaed from banks, the Trustee's forensic team determined that the Debtor engaged in a Ponzi scheme as of February 1, 2019 (the "Ponzi Period").

D. Following his appointment, the Trustee reviewed the debtors' financial books and records information and bank statements subpoenaed from financial institutions and determined that pre-petition, the Debtor Also based on its review, the Trustee determined that Debtor made payments to Citibank on a personal credit card, not issued to or used by the Debtor, and made demand on Citibank for the avoidance and recovery of those payments.

E. Citibank disputed both the amount and the basis for the demand.

F. After each considered the other's respective positions, and negotiations, the Parties reached the settlement memorialized by this Agreement.

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants, conditions, promises, and agreements contained herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

**TERMS**

**ARTICLE 1**
**APPROVAL ORDER AND BINDING EFFECT**

**1.1. Binding Effect.** This Agreement shall become effective and binding only upon entry by the Bankruptcy Court of a final order approving the Agreement (the "Approval Order"). The Approval Order is "final" after it is entered unless an appeal is timely filed and a stay pending appeal is obtained. In the event of a timely-filed appeal and stay, the order shall become final if and when the appeal is resolved in favor of the Trustee. In the event the stay pending appeal is lifted prior to the resolution of the appeal, the order shall become final upon the lifting of the stay pending appeal. The "Effective Date" of this Agreement shall be the first business day after the Approval Order becomes final.

**1.2. Court Approval.** Following execution of this Agreement by each of the Parties, the Trustee will promptly file a motion to approve this Agreement with the Bankruptcy Court. The Trustee shall use his best efforts to obtain the Bankruptcy Court's approval of the Motion and this Agreement, and the Parties shall cooperate in this regard and in defending against an appeal of the Court's approval of the Motion.

**1.3. Termination of Agreement.** In the event that this Agreement is not approved by the Bankruptcy Court with a final Approval Order, with the exception of Article I and Article 2 of this Agreement, this Agreement shall become null and void and of no force or effect.

**ARTICLE 2**
**TERMS OF SETTLEMENT**

**2.1.** Within 14 calendar days after entry of the Approval Order, as defined in Paragraph 1.1 above, Citibank shall pay to the estate the sum of $13,500 by cashier's check, money order, or wire transfer (the "Settlement Payment").

**2.2.** Citibank hereby expressly waives any claim provided by 11 U.S.C. § 502(h) that may arise in connection with the Settlement Payment.

**2.3.** In the event that Citibank files a proof of Claim in the Bankruptcy Case, the Trustee reserves the right to object to such proof of claim.

**ARTICLE 3**
**REPRESENTATIONS AND WARRANTIES**

**3.1. No Undisclosed Inducements.** The Parties represent that they have entered into this Agreement in reliance on their own investigation and that no representations, warranties, or promises other than those set forth in this Agreement were made by the Parties or their agents, employees, or counsel to induce any Party hereto to enter into this Agreement.

**3.2. Representation by Counsel.** Each Party represents that he, she, or it has obtained independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom. The Parties acknowledge that they are executing this Agreement voluntarily, without any duress or undue influence.

**3.3. Authority to Execute Agreement.** The Parties warrant and represent that each is authorized to execute this Agreement on behalf of the respective parties and in their respective capacities as indicated below, provided however that the Trustee's execution of this Agreement is specifically subject to the approval of the Bankruptcy Court as provided for herein.

## ARTICLE 4
## RELEASE OF CLAIMS

**4.1. Release of Claims by the Trustee.** Except as otherwise provided in this Agreement, and effective only upon the payment of the Settlement Amount and the approval of the Agreement by the Bankruptcy Court, the Trustee, for and on behalf of the Estate and his successors hereby releases and discharges Citibank, Citigroup Inc., and their respective, current and former predecessors, successors, parents, Affiliates, subsidiaries, and all their respective agents, attorneys, and employees from any and all claims, demands, controversies, actions, causes of action, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature, or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or unliquidated which the Trustee holds or owns or may have previously owned or held, or may in the future own or hold against each of them relating to the Debtor. For the purpose of this Agreement, "Affiliates" shall include those companies, existing or which come into existence in the future, that directly or indirectly own or are owned by, control or are controlled by, or are under common control of Citigroup, Inc.

**4.2. Release of Claims by Citibank.** Except as otherwise provided in this Agreement Citibank and its agents, attorneys, employees successors, assigns, grantees, and affiliates shall release and discharge any and all claims or interests which each of them may now own or hold, or may have previously owned or held, or may in the future own or hold, against the Trustee and the Estate.

**4.3. Waiver of Rights Under California Civil Code § 1542** This Agreement is intended to be effective as a general release of and bar to any and all Claims by and between the Parties hereto . Accordingly, the Trustee and hereby each expressly waive and relinquish, to the fullest extent permitted by the law, any and all rights under California Civil Code Section 1542 with respect to any and all claims that either may have against each other which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

**4.4.** Citibank expressly acknowledges and agrees that the release of California Civil Code section 1542 contained in this Agreement only applies to this Bankruptcy Case and is not effective in any other unrelated bankruptcy case where the Trustee serves as trustee.

## ARTICLE 5
## GENERAL PROVISIONS

**5.1. Integration.** This Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof and no change, modification, amendment, termination, or discharge of this Agreement shall be binding unless made in writing and executed by each of the parties. All agreements, covenants, representations, and warranties, express or implied, oral, and written, of the parties with regard to the subject matter hereof, are contained in this Agreement and the documents referred to herein or implementing the provisions hereof. No other agreements, covenants, representations, or warranties, express or implied, oral, or written, have been made by any party to another party with respect to the subject matter of this Agreement. All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants, and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby and thereby.

**5.2. No Third-Party Beneficiaries.** This Agreement is not for the benefit of any person who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement, and the provisions of this Agreement are not intended to affect the rights of any party or non-party against any person or entity who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement.

**5.3. Attorneys' Fees.** With respect to any suit or proceeding involving the enforcement of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any provisions of this Agreement, to prevent a breach of this Agreement, for damages by reason of any alleged breach of any provisions of this Agreement, or for a declaration of a Party's rights or obligations under this Agreement, the ultimate prevailing Party shall be entitled to recover from the losing Party or Parties, in addition to such other relief as may be granted, his/her reasonable attorneys' fees (other than the attorneys' fees and costs to prepare this Agreement and seek Bankruptcy Court approval of this Agreement).

**5.4. Survival.** It is expressly understood and agreed by each of the Parties that nothing provided for in this Agreement is intended to nor does it release any claims arising out of breach of this Agreement, or any representations contained herein or

made in connection herewith. All representations, warranties and covenants herein shall survive the execution of this Agreement.

**5.5. Further Documentation.** Following the date hereof, the parties must take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the intention of this Agreement.

**5.6. Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be construed, interpreted, and enforced in accordance with the laws of the State of California.

**5.7. Jurisdiction.** In the event a dispute arises under this Agreement, the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce this Agreement.

**5.8. Interpretation.** This Agreement shall be treated as jointly drafted and will not be construed against any Party as drafter. Furthermore, in the event of any ambiguity in or dispute regarding the interpretation of this Agreement, the interpretation will not be resolved by any rule of interpretation providing for interpretation against the Party who causes the uncertainty to exist or against the draftsperson.

**5.9. Meaning of Pronouns and Effect of Headings.** As used in the Agreement and attached exhibits, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. The captions and paragraph headings in the Agreement are inserted solely for convenience or reference and shall not restrict, limit, or otherwise affect the meaning of the Agreement.

**5.10. Counterparts.** This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement.

**5.11. Severability.** In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof. If such condition, covenant, or other provision shall be deemed invalid due to its scope or breadth, such covenant, condition, or other provision shall be deemed valid to the extent that the scope or breadth is permitted by law.

**5.12. Waiver.** No breach of any provision herein can be waived unless in writing. Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof. No failure or delay on the part of any Party to exercise any right hereunder, nor any other indulgence of such Party, shall operate as a waiver of any other rights hereunder, nor shall any single exercise by any Party of any right hereunder preclude any other or further exercise thereof. The rights and remedies herein provided are cumulative and not exclusive of any right or remedies provided by law.

**5.13. Binding on Successors.** This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, and administrators of each of the Parties, including but not limited to, any successor trustee and the Debtor after the case is dismissed or closed.

**5.14. No Assignments or Delegation of Rights.** Neither Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.

**5.15. Further Assurances.** The Parties shall take all further acts and sign all further documents necessary or convenient to effectuate the purpose of this Agreement.

**5.16. Full Authority to Sign Agreement.** Any individual signing on behalf of any Party hereto expressly represents and warrants to each other Party that he or she has full authority to do so and to bind such Party hereto and, in the case of the Trustee, to bind the Estate, subject only to approval of the Bankruptcy Court.

**5.17. Parties to Bear Own Costs.** Each party shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with negotiation, preparation, execution, and approval of this Agreement.

**5.18. Recitals Acknowledged.** The Recitals are true and correct to the best of the Parties' knowledge and hereby adopted by the Parties.

**5.19. Notices.** Any notice by any Party to any other Party may be made by e-mail and delivered to the other Party at the address below until written notice of a different email address is given by the Party. Any payments to be made pursuant to this Agreement shall be deemed made only upon actual receipt.

**To the Trustee**:
Sam S. Leslie
1130 S. Flower Street
Suite 312
Los Angeles, CA 90015
email: sleslie@trusteeleslie.com

with a copy to:
Elissa D. Miller, Esq.
Greenspoon Marder
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
email: elissa.miller@gmlaw.com

**To Citibank**
Beth Jennings
Citibank NA
6400 Las Colinas Blvd
Irving, TX 75039
beth.jennings@citi.com

IN WITNESS WHEREOF, the Parties hereto hereby execute this Settlement Agreement .

______________, 2026

Sam S. Leslie, solely in his capacity as Chapter 7 Trustee of the Estate of RAC Development Inc.

July 23, 2026

By: [signature]
Citibank, N.A., a Federally Chartered National Bank

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENT WITH CITIBANK, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES, AND DECLARATION OF SAM S. LESLIE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 30, 2026 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) July 30, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| July 30, 2026 | Cheryl Caldwell | */s/Cheryl Caldwell* |
| *Date* | *Printed Name* | *Signature* |

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Ori S Blumenfeld** ori.blumenfeld@offitkurman.com, liyah.lewis@offitkurman.com;ik-maurice.ibe@offitkurman.com
- **John Burgee** jburgee@bandalaw.net
- **Aurora Cassirer** aurora.cassirer@pierferd.com
- **Randy Chang** randyc@thechangfirm.com
- **Steven P Chang** schang@slclawoffice.com, schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;changsr75251@notify.bestcase.com
- **Jennifer Witherell Crastz** jcrastz@hrhlaw.com
- **Rachel M Darvish** rachel@darvishlawfirm.com
- **Robert D Estrin** restrin@leechtishman.com, mmocciaro@leechtishman.com
- **Faith A Ford** fford@faithlaw.org, msfordlaw@aol.com;fordfr72013@notify.bestcase.com
- **Sandford L. Frey** sandford.frey@stinson.com, lydia.moya@stinson.com;robyn.sokol@stinson.com;dennette.mulvaney@stinson.com;jnaiya.herd@stinson.com
- **Christopher D Hughes** chughes@nossaman.com
- **Jacqueline L James** jjames@buchalter.com, gvidales@buchalter.com;docket@buchalter.com;pjolley@buchalter.com
- **Steven N Kurtz** skurtz@lakklawyers.com, ncondren@lakklawyers.com;smcfadden@lakklawyers.com
- **Sam S Leslie (TR)** sleslie@trusteeleslie.com, trustee@trusteeleslie.com;C195@ecfcbis.com
- **Peter M Lively** PeterMLively2000@yahoo.com
- **Noreen A Madoyan** Noreen.Madoyan@usdoj.gov
- **Elissa Miller** elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;courtmail@gmlaw.com
- **Dennette A Mulvaney** dennette.mulvaney@stinson.com, lydia.moya@stinson.com;jnaiya.herd@stinson.com
- **Ryan D O'Dea** rodea@shulmanbastian.com, lgauthier@shulmanbastian.com;avernon@shulmanbastian.com;yrivera@shulmanbastian.com
- **Giovanni Orantes** go@gobklaw.com, cmh@gobklaw.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com,andreac@gobklaw.com,normay@gobklaw.com
- **J. Alexandra Rhim** arhim@laklawyers.com, ncondren@laklawyers.com
- **Larry Robert Schmadeka** larry.schmadeka@pierferd.com
- **Leonard M. Shulman** lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com
- **Jessica M. Simon** jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **Brooke S Thompson** bthompson@shulmanbastian.com, avernon@shulmanbastian.com
- **Paul Tokar** ptokar@bzlegal.com
- **Tiffany D Truong** tiffany.truong@kts-law.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Reilly D Wilkinson** rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**

**Debtor**
RAC Development, Inc.
134 W Olive Ave
Monrovia, CA 91016-3410

Beth Jennings
Citibank NA
6400 Las Colinas Blvd
Irving, TX 75039